Thank you, Your Honor. I would like to reserve five minutes for rebuttal. May it please the Court and counsel, my name is Suzanne Elliott and I'm here on behalf of Mr. Jerome Powell, who is here on a habeas petition as has asserted that his conviction for murder in the Washington State courts should be reversed because both his appellate and trial counsel were ineffective. Because my time is short, I'm going to concentrate on three main topics today. Briefly, Mr. Powell was convicted of killing Charles Allison in the summer of 1979. He presented what was essentially an alibi defense, and his alibi was refuted primarily by the State's only two eyewitnesses or semi-eyewitnesses to the killing, Donald Clark and Tiny Razor. They suffered, of course, in my view, in terms of credibility, because they were also co-defendants of Mr. Powell, who had received substantial plea bargains in exchange for testifying against Mr. Powell. The parties agree that Mr. Powell must demonstrate that the Washington State appellate court opinion was contrary to or an unreasonable application of clearly controlling U.S. Supreme Court precedent, and in the case of ineffectiveness claims, I know that this Court is well aware of the Strickland standard, which is the Petitioner must demonstrate deficient performance on the part of his counsel and then some deficit or some prejudice as a result of that deficiency. In terms of the trial claims, at trial, Powell was shackled in front of the jury. Now, this case was tried originally – well, he pled guilty and it came back and he was tried originally in the early 80s, but even then, the Washington – or the United States Supreme Court precedent on this issue and this circuit's precedent on this issue were exceedingly clear. Defendants have a constitutional right to appear before the jury unshackled. It's not an unqualified right, though. There are times when it can be done, and I was – this was not routine. I mean, they did talk about it. This was – well, it was not routine, but the trial judge didn't follow the law either. In fact, the discussions took place in camera. This Court's precedent and precedents, the U.S. Supreme Court's precedents and even the Washington State Supreme Court precedents, first says you have to have a factual basis. You have to have some showing particular to this case, this defendant, that demonstrate that there's a heightened need for security measures in the courtroom. In fact, the purported reason in this case had nothing to do with the defendant. It had to do – there was no proof that Mr. Powell had ever tried to escape. There was some talk that his brother – Kennedy. Wasn't there some evidence by the defendant's brother of a potential escape plot? There was a rumor of that. You call it a rumor, but was that not evidence? Was that something told to the trial judge and discussed in camera? There was something about that discussed in camera. There's no record. You think that there was an abuse of discretion by the judge finding that that was a fact that he should take into consideration? Absolutely. I also think it was an abuse of discretion for the Court to hold those hearings in camera when the law – the Supreme Court precedent makes it clear that there's a list of factors that have to be decided on the record. So he could hold it in camera, but he should have a reporter in there. Yes. He should have a record of the decision that he makes and why he has rejected or adopted the factors set forth by the Supreme Court precedent. The second part of that test is whether or not the trial judge considered less restrictive alternatives to the shackling of the defendant in the courtroom in front of the jury. In this case, there's no discussion about less restrictive alternatives. And, in fact, if the issue was threats of disruption from the outside, there certainly were measures that had – could have been taken at the doors of the courtroom that would not have been prejudicial to Mr. Powell in front of the jury. Now, if I understand your argument, you're making this as part of the ineffective assistance? Yes. But you're not making it directly, or are you – I – I think I have to make it under the rubric of ineffective assistance. All right. So his counsel should have been raising all these problems instead of just sort of going along with the shackling. You know, counsel was schizophrenic. I would – trial counsel. I would tell counsel. There is some suggestion in the record that counsel – trial counsel made no objection to the – at least the initial decision to shackle the defendant, as well as mention that by the – mention made of that by the trial judge in front of the jury. There's also some indication from the prosecutor in a later filed affidavit that, in fact, trial counsel had had a factual objection to the claims of disruption and the rumors of disruption. Then, after jury selection, trial counsel did get up and say, I'm now concerned about the mention of the shackling and the security measures, and I – I want a new jury panel. That was denied. So there's some evidence in the record that – or at least the State's argument is no objection was made. It's my argument that I think an ineffective objection was made at some point, and certainly too late. And the record, of course, was not preserved by trial counsel well. So our argument is trial counsel was deficient in that regard, and that it was exceedingly prejudicial in a case where – He wouldn't be deficient if he believed what you call a rumor. I believe trial counsel would still be deficient in failing to object because none of that was personal to her client, who was on trial for a crime of violence, murder, who was maintaining his innocence. An escape plot to bust him out of the courtroom was not directly relevant to her client? I don't – there was no showing that Mr. Powell was a part of any escape plot. It was rumored that his brother was coming to help him. Does that affect the defendant? I don't – if the defendant has no knowledge of that plot, no. But if you assume that he has no knowledge of the plot and you assume the plot doesn't occur, then you must conclude that there was no reason for insecurity. I don't believe there's a factual basis in this record for any security. There's nothing in this record that was proven. If there were a factual basis, if Mr. Powell had attempted to previously escape, absolutely. But that – but even then, the next measures that were taken were shackling the defendant. And that particular solution seems to me to be, one, not the least restrictive alternative, and, two, have nothing to do with the issue of an outside attempt to break into the courtroom and have Mr. Powell escape. You don't think if there was an outside attempt, he might help his brother? He might. He might. However, that could be taken care of outside the presence of the jury and outside the courtroom with added security there. Does the gang context add anything relevant on the security implications of an attempted breakout by his brother? Accepting the State's theory, no, because all of the gang members were in – either in custody or had turned State's witnesses and were either in custody or were cooperating at that point with the State in testifying against Mr. Powell. So – Was his brother in this gang? The – there was a person named Teddy Powell who was mentioned in testimony and who was implicated. That, I do not believe, is the brother, because there's another brother and Mr. Powell isn't – Mr. Teddy Powell is actually his cousin, not his brother. I believe the escape attempt related to yet another person. But, again, the record's not exceedingly clear on that point. And – Did the judge give a curative instruction to the jury regarding shackling and handcuffs? In the record, the judge said to the effect, you'll notice there's a lot of security in the courtroom. Pay no attention to that. But that was as to, in general, the security in the courtroom. And I – I just simply reject the State's argument that somehow this was a strategic decision. I can't imagine any strategy that would include in a murder case when there weren't – wasn't a factual basis to have your client shackled in front of the jury. As to the second trial issue, trial counsel failed to object in closing to the prosecutor's vouching for State witnesses as well as expressing a personal opinion about the credibility of the defense witnesses. The Washington State Appellate Court found this to be deficient performance. And, of course, we accept that. We, of course, think it's an unreasonable application of Supreme Court precedent to find that that deficiency was not prejudicial in this case. As we've argued in our brief, this case was based entirely upon – or primarily upon the testimony of the two co-defendant witnesses who had much to gain by testifying against Mr. Powell, who had received favorable plea bargains and had questionable – had credibility problems. They had been previously convicted of crimes. And so it's particularly prejudicial for a prosecutor to make comments about vouching in that particular situation. I have some other issues regarding the trial counsel's ineffectiveness. However, I'd like to turn to the appellate counsel's ineffectiveness rather quickly here as my time is running out. As to the ineffective assistance of counsel on appeal, the direct appeal in this matter, Mr. Powell had appointed counsel. He had an order of indigency that paid for the production of the record and for performance of his counsel. In this first-degree murder case, appellate counsel ordered 54 pages of the transcript, did not review any of the trial, looked at the – and you'll find those 54 pages contained in the excerpt of the record – looked at the essentially pretrial motions hearing, and from that called out a speedy trial violation and a failure to – a double jeopardy problem and a failure to join problem. There's no question in my mind that although there is no United States Supreme Court opinion directly on point, that the related United States Supreme Court opinions compel the conclusion that the Washington State Supreme Court's decision that this was not deficient – or the Washington State appellate court's decision that this The State in this case – You're saying it's an unreasonable application of the first prong of Strickland? I'm saying it's an unreasonable application of the first prong of Strickland, as well as the litany of cases that I cite in my brief where the United States Supreme Court has protected the right to appeal when it's granted by statute or by state constitution, as well as all of the tools to complete an effective appeal, including the transcript, the appointment of counsel, and production of the record. The State here drags out the maxim that, you know, great appellate lawyers don't raise every issue in an appeal. They winnow out the wheat from the chaff. I actually have no disagreement with that particular proposition. The problem in this case is the appellate attorney did no winnowing at all because he didn't look at the entire record. You can't winnow the wheat from the chaff when you don't know what's out there in the field. The trial – and I think there would be a different argument in this case if appellate counsel had been trial counsel, but the State concedes he wasn't, and the trial counsel here submitted an affidavit saying appellate counsel never contacted me and said, hey, should I order all the days of trial or, you know, was there one issue that is compelling here? Literally, the person who was appointed in this direct appeal didn't know what happened at trial. Where did that come out? And was that in the district – federal district court it came out, or was it in the State proceedings that the – It came out in the State proceedings. Counsel said that – And they dragged out the tire maxim – tired maxim that great appellate counsel winnows the wheat from the chaff, and so this was all fine. That's just unreasonable. As a 25-year appellate lawyer, I can't – and as appellate court judges, I can't imagine the Washington State appellate court saying, well, we're only going to look at the 54 – first 54 pages of this record if they were presented with the whole thing. Look, if Mr. Powell's appellate counsel had not filed a brief, he would have had an ineffective assistance of claim under the – under the precedent cited in our – in our – What about the second problem with Strickland? So he didn't odor a transcript. Did he have any issues on appeal on which he could have won? Yes. He had a transcript. Yes. And those include the issues that we've argued here regarding the failure to object in closing, the failure to call the – Well, but as I remember the transcript, the defense vouched for its witnesses once the prosecution had vouched for the witnesses. So therefore, wasn't that an example of a strategy? The State has a higher duty under the law to – the State can't vouch for their witnesses. It may have a higher duty, but the question is, was the failure to object a conscious decision, a strategic decision of the defense counsel to trap the prosecution into doing that so that the defendant could also vouch for the defense witnesses? Well, one, there's no evidence of that. And two, since the – Are we to presume that under the cases under Strickland? No. I think the presumption is rebutted here by the fact that this was a credibility case. We may – we have to presume, but you think it's rebutted by – It's rebutted. As well as that would be a silly strategy because the prosecutor argues first. You don't argue in the prosecutor's case. There's no guarantee when you stand up. Well, if the – if the meritorious claims were ineffective assistance of trial counsel, is that something – we normally won't entertain those on appeal. We say, well, you're going to have to bring a collateral proceeding. These issues – Would the State courts do the same thing? These issues could have been raised in a direct appeal despite the lack of objection because in Washington you can overcome the lack of objection on direct appeal if the error is substantial enough, as we argue. It's not so much the lack of an objection as you don't know why there was no objection. In other words, when we get ineffective assistance claims on direct appeal, most of the time we won't entertain them because we say, well, this may or may not have been a strategic decision of counsel. We don't know yet. We're going to have to have an evidentiary hearing. The trial record can't tell us the reasons why counsel didn't do something. And I just wondered if the State courts would have done the same thing. Then you don't need a transcript if you're only trying to prove ineffective assistance of counsel. You need it when the habeas petition comes along or the post-conviction petition. Well, I would agree, except that I have cited, when I get to the prejudice issue in my briefing, I point out that the Washington State Supreme Court has entertained these issues on direct appeal. The shackling, the failure, reversing because the prosecutor asked the defendant to comment on the truthfulness of other witnesses, reversing because the prosecutor vouched for credibility. And so I argue in my briefing that they would have been raisable in the Washington State courts on appeal, and the real prejudice is that you get a more favorable standard of review. Well, I suppose the shackling and the vouching, you don't have to go through the root of ineffective assistance of counsel. No. Well, maybe you do because you didn't object at trial. Okay. I'm now well into my rebuttal time. I will save the remaining two minutes that I have for rebuttal. Thank you. Okay. We'll double your rebuttal time. We'll take it up two minutes. Thank you. Make sure you've said everything you want to say. Okay. So we'll permit four minutes for rebuttal. If Mr. Sampson doesn't mind. Certainly not, Your Honor. May it please the Court, John Sampson, Assistant Attorney General, representing the respondent appellee. In this case, as the Court is aware, is a case under 2254D, and relief is barred unless the state court adjudication was an unreasonable application of Supreme Court case law. I think that in viewing that and in viewing the claims of ineffective assistance of counsel, the Court should keep in mind that this case, the trial, occurred in 1982. So much of the case law that has developed since that time regarding the use of restraints simply was not available to counsel at the time of the trial. I intend to address the issues argued on appeal during oral argument, but I'm certainly willing to address other parts of the claims that were not reached. What did you say the date of the trial was? The date of the trial was in 1982. I believe it started around January of 1982. Addressing the issue of whether counsel should have objected to the use of restraints, much of the argument presented has gone to a substantive claim of shackling and not to whether counsel was ineffective for not objecting. Counsel agreed that restraints were necessary in this case. The hearing was in camera, but the counsels did say on the record, and this is at excerpts of record 1137 and 1140 through 1143, that she agreed restraints were proper. There was a serious threat of an escape in this case. Explosives had been stolen from Fort Lewis, and the police had information that those explosives might be used in an escape attempt. And although counsel now says that other security measures could be used to protect the court, several of those measures probably didn't even exist in 1982. I don't believe that the court had metal detectors back in 1982, as they do now. So viewing the case at the time of the trial, counsel's decision not to object was reasonable performance. What court was this in again? Was it in Tacoma? It was. First County Superior Court? Yes, Your Honor. First County Superior Court. Where did they have the courthouse then in 1982? I'm sorry. Where was the courthouse in 1982? Your Honor, that is way before I came into Washington, so I really do not know. I suppose it is at the same location it's at now, but I'm not sure. Even if counsel had objected, however, there's no showing that the judge would have sustained the objection to the restraints. The judge said these restraints are necessary. The judge would have imposed the use of the restraints. There's no prejudice being shown. And also there's no prejudice that this affected the outcome of the jury, because there's no real evidence showing the jury actually saw Mr. Powell in restraints. There was discussion by the judge regarding security measures to the jury, and this was found at the court statements to the jury are quoted at Excerpts of Record 1867. And basically what the judge said was there are security measures in place. Do not view these in any way to prejudice the defendant's right to a fair trial in this case. And that's certainly not what was actually said, but that's a paraphrase of what was said. The state court decision in this case was a reasonable application of Supreme Court case law because the decision not to object was reasonable, competent representation, and there was no showing of prejudice. Moving on to the failure to object to closing argument, the court has recognized that counsel often do not object to closing arguments. Counsel will not object because counsel does not want to draw attention to the prosecutor's argument. Counsel will then address the issue when counsel gets up and makes the defense argument. And as Your Honor pointed out, claims of ineffective assistance to counsel are often brought on a collateral challenge because the record doesn't show why counsel decided not to object. The counsel must be presumed to have performed in a reasonably competent manner. The court must strongly presume that counsel decided not to object because counsel did not want to draw undue attention to the allegedly improper remarks. And I would point out that the district court went through the various statements by the prosecutor and found that most of those statements, although they might have at times reached the border of being improper, where most of the statements were proper inferences from the record and from the evidence. And that district court's analysis is at excerpts of record 1863 through 1866. The state appellate court said some of these were improper, was that right? That is correct. And then the state appellate court said that there's no showing of prejudice. And the reason there's no showing of prejudice is because the trial judge instructed the jury and the prosecutor repeatedly reminded the jury that the jury was the sole determiner of credibility. The trial judge instructed the jury that they should carefully examine the testimony of an accomplice, and this Petitioner argues that the prosecutor's arguments were so inflammatory because the codefendants testified against Mr. Powell. Well, the jury was specifically instructed, and this is at excerpts of record 198, instruction number 7, that they should carefully consider that testimony and do not base a conviction on that testimony, solely on that testimony, unless they were convinced beyond a reasonable doubt that this testimony was credible and should be used against them. In light of the judge's instructions, in light of the fact that the majority of the prosecutor's arguments were proper arguments, any error that occurred by not objecting to them did not affect the outcome of the trial, and therefore there is no showing of prejudice. Moving on to the Ineffective Assistance Counsel on Appeal, I would simply point out that if this Court were to grant relief on this, on the claim of Ineffective Assistance Counsel on Appeal for not ordering transcripts, it would be, in my research, the first court to say the counsel is ineffective because they didn't order enough transcripts. The proper test is were there issues that could have been and should have been raised so the counsel was in effect or performed efficiently, and would those issues, if they had been raised, resulted in a reversal of the conviction? And the fact is there are no such issues. Petitioner argues that counsel could have raised the restraints issue and could have raised the improper arguments by the prosecutor as an issue on direct appeal, but both of those claims were waived because they were not objected to. Counsel could not have raised those on direct appeal because there was no objection. And the court of appeals specifically in Excerpts of Record 67 held to that fact that the challenge to the prosecutor's arguments could not have been raised on direct appeal because there was no objection to it. And as Your Honor pointed out in questioning, if this was raised as an ineffective assistance to counsel for failing to object, that would be a claim that would be properly brought in a State collateral challenge rather than a direct appeal. And there is a Washington Supreme Court case, I believe it is State v. McFarland, which essentially says that these type of challenges are better brought in a State personal restraint petition rather than a direct appeal because it requires bringing in additional evidence. So counsel was not ineffective for not raising these issues on direct appeal. Because this was a reasonable application of Supreme Court case law, the State court decision does not rise to the level that a petitioner is entitled to relief under 28 U.S.C. 2254d, and we would therefore ask that the court affirm the district court's judgment in this case. Thank you. Thank you, Mr. Chief. Thank you. Briefly, in rebuttal, Illinois v. Allen, which is the United States Supreme Court's first case condemning the shackling of a defendant at trial was published in 1970. So I take issue with the government's argument or the State's argument that somehow in 1982 the standards in the Pierce County Superior Court were different from what they are today. The case law is – has been clear, I think, since 1970. There have been cases reversed since that time. And apparently there are still issues with shackling in the trial courts because as recently as Deck v. Missouri, the United States Supreme Court has had to remind trial courts that it's inappropriate to shackle defendants. But that doesn't mean that in 1982 the Supreme Court standard was any different. Let me ask you one question. Assuming for a moment that we concluded there was inadequate grounds to shackle the appellant, notwithstanding the issues of danger that are presented, then what evidence is there in the record specifically? Is there any evidence showing that the jury could observe the shackles? There – the only – What goes to the court general instruction on security? There is the court's comment. That's it. There's no pictures of the courtroom. We did and have repeatedly asked for an evidentiary hearing on this issue. And on ER 1869, the district court explains that if they granted a hearing in this case, they'd have to grant an evidentiary hearing in a lot of cases. And so we – and they declined to grant us an evidentiary hearing in this case. There are – there is no testimony in this case from the jurors at trial. There is some indication, and I would refer the Court to ER 1889, where there is the post-jury selection colloquy with trial counsel about the security – I mean ER 1868, excuse me – about the security measures. And you can at least infer from this that Ms. Mandel, the trial counsel, had become concerned about the jury viewing the security measures because that's the point at which she in essence objects to them and says she wanted a new jury panel. Okay. Let me go back to the question that – or comment that can be made near the opening of your argument. That is, the Supreme Court before 1982 has made a ruling that generally suggests shackling's inappropriate. But it's not a per se absolute prohibition. So what makes the state court's application of that precedent an unreasonable application of Supreme Court law in light of evidence of explosives being heisted and some risk of a planned jailbreak? One, because I don't think those two factors are sufficient enough because they're not sufficiently tied to Mr. Powell. I think you have to have actual evidence of his disruptive behavior for a scam to take place. If his brother is thought to be involved, is that not an adequate tie to him? No. Nobody brought the brother in. Nobody brought the police officers in to testify about this. It took place in chambers, and there's this general discussion on the record. You know, in a case where shackling would be appropriate, I could see the judge having an offer of proof from the State. What have you heard? Do you have a certified copy of the escape charges? Those kinds of things. There's no record of that. Number two is there's literally no record of the second prong, which is if some heightened security is appropriate in a case, were there less restrictive alternatives to shackling the defendant, which is prejudicial, as we allege in this case, not just because the jury sees a chained man in a murder trial, but also in certain cases to the defendant's ability to assist counsel, which is not the other aspect that we haven't alleged that. But that's another aspect talked about in the cases. Okay. Thank you. You're welcome. Thank you. I would ask the Court to grant the writ. Thank you. Thank you. We thank both counsel for the excellent arguments.
judges: Canby, Gould, Bea